## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| LETIA DICKERSON, on behalf of herself and a class of similarly situated persons,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MONEYGRAM PAYMENT SYSTEMS, INC. and MONEYGRAM INTERNATIONAL, INC.,<br><br>　　　　　Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Letia Dickerson, individually and on behalf of all others similarly situated, ("Plaintiff"), brings this action against Defendant MoneyGram Payment Systems, Inc., and Defendant MoneyGram International, Inc. (collectively "MoneyGram" or "Defendants"), seeking monetary damages, restitution, and/or injunctive relief for the proposed class and subclasses, as defined below. Plaintiff makes the following allegations upon information and belief, the investigation of counsel, and personal knowledge or facts that are a matter of public record.

## I.    INTRODUCTION

1.    The release, disclosure, and publication of sensitive, private data can wreak havoc in people's lives. This intrusion of privacy and loss of control is a harbinger of identity theft as the risk of identity theft increases four-fold for victims of a data breach.[1] Data breaches have grave consequences for victims years after the actual date of breach as thieves use this illicitly obtained information to sew chaos for victims. These thieves open new financial accounts, take out loans, obtain medical services, improperly obtain government benefits, and/or obtain driver's licenses in the names of their victims. Victims of data breaches must maintain a constant vigilance over the

---

[1] Dave Maxfield & Bill Latham, Data Breaches: Perspectives from Both Sides of the Wall, S.C. Lawyer (May 2014).

potential misuse of their information simply to maintain the basic security to which we are all entitled.

2.    MoneyGram is a global leader in money transfer with over 80 years in the industry that operates in over 200 countries and territories, dealing in over 135 currencies, and has served 150,000,000 people in the past five years.[2] MoneyGram claims they "lead the industry in protecting customers." [3] MoneyGram represents: "MoneyGram works diligently to prevent its systems from being used to perpetrate unlawful activity."[4] Over 150,000,000 potential victims trusted MoneyGram with their private information relying on MoneyGram's assurances of security and protection.

3.    On or about October 7, 2024, Defendants provided a Cybersecurity Incident notification admitting that in late September of 2024, it experienced a data breach (the "Data Breach").[5] The Cybersecurity Incident notification states:

> **What Happened?**
> On September 27, 2024, we determined that an unauthorized third party accessed and acquired personal information of certain consumers between September 20 and 22, 2024. Our investigation into the issue is ongoing.
>
> **What Information Was Involved?**
> The impacted information included certain affected consumer names, contact information (such as phone numbers, email and postal addresses), dates of birth, a limited number of Social Security numbers, copies of government-issued identification documents (such as driver's licenses), other identification documents (such as utility bills), bank account numbers, MoneyGram Plus Rewards numbers, transaction information (such as dates and amounts of transactions) and, for a limited number of consumers, criminal

---

[2] *About MoneyGram*, MoneyGram, available at https://corporate.moneygram.com/about-us/#Leadership (last visited Oct. 11, 2024).
[3] *Compliance*, MoneyGram, available at https://corporate.moneygram.com/compliance/ (last visited Oct. 11, 2024).
[4] *Id*.
[5] *Consumer Data Notice*, MoneyGram, available at https://www.moneygram.com/intl/us-notice (last visited Oct. 11, 2024).

investigation information (such as fraud). The types of impacted information varied by affected individual.

**What We Are Doing**
Upon detecting the issue, we took steps to contain and remediate it, including proactively taking certain systems offline, which temporarily impacted the availability of our services. We also launched an investigation with the assistance of leading external cybersecurity experts and have been coordinating with law enforcement. Our systems are back online and we have resumed normal business operations.

**What You Can Do**
We recommend that you remain vigilant for incidents of fraud and identity theft by reviewing account statements and monitoring your free credit reports. If you are in the U.S. and would like to check your credit report, you are entitled under U.S. law to one free credit report annually from each of the three nationwide consumer reporting agencies. U.S. residents can order a free credit report by visiting www.annualcreditreport.com or calling toll-free at 1-877-322-8228. The U.S. Reference Guide below provides recommendations by the U.S. Federal Trade Commission on the protection of personal information. We also recommend that you remain alert for unsolicited communications involving your personal information.

In addition, we have arranged to offer affected U.S. consumers identity protection and credit monitoring services for two years at no cost to you. The U.S. Reference Guide below provides information on activation of the services.

We regret any inconvenience this issue may have caused. If you have questions regarding this matter, please refer to the Frequently Asked Questions below or contact us at (833) 918-1122 toll-free, Monday through Friday 8 a.m. to 8 p.m. CT (excluding major U.S. holidays). Please be prepared to provide engagement number B132368 when calling.[6]

4.    Defendants know the value of this private information and still failed to adequately protect Plaintiff's and Class Members Personally Identifiable Information ("PII"). MoneyGram states it is "committed to safeguarding the privacy of your Personal Information."[7] However,

---

[6] *Id.*
[7] *Global Privacy Notice* (Apr. 1, 2022), MoneyGram, available at https://www.tbcbank.ge/web/documents/10184/666084/Updated-MoneyGram-Global- Consumer-Notice-Privacy-ENG.pdf/2ac2cb71-9efc-4ca0-a988-366fdcafddd2 (Last visited Oct. 11, 2024).

MoneyGram's customers had their PII compromised due to Defendants' negligent and/or carless acts and omissions as they failed to protect their customers' sensitive data. Hackers targeted and obtained Plaintiff's and Class Members' PII because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach remains for their respective lifetimes.

5.      Defendants have admitted that the hackers gained access to information such as names, phone numbers, email and post addresses, dates of birth, Social Security numbers, government issued IDs such as driver's licenses, utility bills, bank account numbers, transaction information, and even criminal investigation information.[8] It is difficult to overstate the scope and scale of potential harm Defendants' victims now face.

6.      As a result of the Data Breach, through which their PII was compromised, disclosed, and obtained by unauthorized third parties, Plaintiff and Class Members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Plaintiff and Class Members must now and in the future closely monitor their financial accounts, and accounts of all kinds, to guard against identity theft, at their own expense. Consequently, Plaintiff and the other Class Members will incur ongoing out-of-pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, and other protective measures to deter and detect identity theft.

7.      By this Complaint, Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose Private Information was accessed during the Data Breach.

---

[8] *Consumer Data Notice*, MoneyGram, available at https://www.moneygram.com/intl/us-notice (last visited Oct. 11, 2024).

## II.    JURISDICTION, VENUE, AND CHOICE OF LAW

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, et seq., because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

9.    The Court has jurisdiction over Defendant MoneyGram Payment Systems, Inc. as it has sufficient minimum contacts with this District, and has purposefully availed itself of the privilege of doing business in this District such that it could reasonably foresee litigation being brought in this District.

10.    The Court has jurisdiction over Defendant MoneyGram International, Inc., as it maintains its principal place of business in this District, has sufficient minimum contacts with this District, and has purposefully availed itself of the privilege of doing business in this District such that it could reasonably foresee litigation being brought in this District.

11.    Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because MoneyGram International Inc.'s principal place of business is located in this District and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

## III.    PARTIES

### A.    Plaintiff Letia Dickerson

12.    Plaintiff Letia Dickerson is a citizen of and is domiciled in the State of North Carolina.

13.     Plaintiff is/was a customer of MoneyGram and used its money transfer and payment services on multiple occasions.

14.     Plaintiff provided MoneyGram with confidential and sensitive PII as requested and required by Defendants for the provision of their services. Defendants obtained and continue to maintain Plaintiff's PII and have a legal duty and obligation to protect that PII from unauthorized access and disclosure.

15.     Plaintiff would not have entrusted her PII to MoneyGram had she known that MoneyGram failed to maintain adequate data security.

16.     On or about October 10, 2024, Plaintiff learned of the Data Breach from online news and based upon the disclosure that she read on MoneyGram's website, concluded that her personal information was compromised.

17.     Plaintiff subsequently spent several hours taking action to mitigate the impact of the Data Breach, including researching the Data Breach, researching ways to protect herself from data breaches, and reviewing her financial accounts for fraud or suspicious activity. She now plans to spend several hours a month checking account statements for irregularities.

18.     Plaintiff reasonably expected MoneyGram to protect her PII, but MoneyGram's failures have caused Plaintiff to suffer emotional distress, anxiety, concern, and unease about unauthorized parties viewing and potentially using her PII. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money to contain the impact of the Data Breach.

**B.    Defendants**

19.     Defendant MoneyGram Payment Systems, Inc. is a wholly owned subsidiary of the publicly traded Defendant MoneyGram International; Inc., which is incorporated in Delaware and has its headquarters located at 2828 N. Harwood, 15th Floor Dallas, TX.

20.    In the course of business, Defendants collected from their customers names, phone numbers, email and post addresses, dates of birth Social Security numbers, government issued IDs such as driver's licenses, utility bills, bank account numbers, transaction information, and even criminal investigation information.[9]

## IV.    FACTUAL BACKGROUND

**A.    Defendants Failed to Adequately Protect Customer Data, Resulting in the Breach.**

21.    While requiring customers provide them with extensive personal information in order to use their services, MoneyGram advertises that it is "committed to safeguarding the privacy of your Personal Information."[10] MoneyGram provides that they "use the appropriate organizational, technical and administrative measures to maintain the security of your Personal Information."[11] MoneyGram represents they "lead the industry in protecting customers."[12] MoneyGram's statements throughout their public presence informs customers that their PII will remain secure. Plaintiff and the represented class detrimentally relied on MoneyGram's assurances.

22.    Notwithstanding Defendants' promises, on September 20, 2024, MoneyGram experienced a data breach affecting untold millions of their customers.[13]

23.    MoneyGram claims to have discovered the data breach on September 27, 2024.[14]

---

[9] *Consumer Data Notice*, MoneyGram, available at https://www.moneygram.com/intl/us-notice (last visited Oct. 11, 2024).
[10] *Global Privacy Notice* (Apr. 1, 2022), MoneyGram, available at
https://www.tbcbank.ge/web/documents/10184/666084/Updated-MoneyGram-Global- Consumer-Notice-Privacy-ENG.pdf/2ac2cb71-9efc-4ca0-a988-366fdcafddd2 (Last visited Oct. 11, 2024).
[11] *Id*.
[12] *Compliance*, MoneyGram, available at https://corporate.moneygram.com/compliance/ (last visited Oct. 11, 2024).
[13] *Notice of Data Breach*, available at https://www.moneygram.com/mgo/us/en/notification/notice/ (last visited Oct. 11, 2024).
[14] *Id*.

24.     MoneyGram admitted its systems were breached by hacking through a Notice of Data Breach on its website posted October 7, 2024 and a notice with the Office of the Massachusetts Attorney General on October 7, 2024.[15]

25.     MoneyGram was familiar with its obligations—created by contract, industry standards, common law, and representations to its customers—to protect customer information. Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation that MoneyGram would comply with its obligations to keep such information confidential and secure.

26.     Defendants failed to comply with these obligations, resulting in the Data Breach. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records. Plaintiff would not have utilized MoneyGram's services if the Defendant disclosed that their data security measures were insufficient and their data was vulnerable to attack.

**B.     The Data Breach Puts Consumers at Increased Risk of Fraud and Identity Theft**

27.     An identity thief uses victims' PII, such as name, address, and other sensitive and confidential information, without permission, to commit fraud or other crimes that range from immigration fraud, obtaining a driver's license or identification card, obtaining government benefits, and filing fraudulent tax returns to obtain tax refunds.

28.     Identity thieves can use a victim's PII to open new financial accounts, incur charges in the victim's name, take out loans in the victim's name, and incur charges on existing accounts of the victim. Plaintiff's finances are now at risk due to the Data Breach.

---

[15] *Notice of Data Breach*, MoneyGram, available at https://www.mass.gov/doc/2024-1798-moneygram-payment-systems-inc/download.

29.    Identity theft is the most common consequence of a data breach—it occurs to 65% of data breach victims.[16] Consumers lost a total of $43 billion to identity theft and fraud in 2023, which caused substantial emotional distress.[17]

30.    Plaintiffs are now in the position of having to take steps to mitigate the damages caused by the Data Breach. Once use of compromised PII is detected, the emotional and economic consequences to the victims are significant. Studies done by the ID Theft Resource Center, a non-profit organization, found that victims of identity theft had marked increased fear for personal financial security. The report attributes this to more people having been victims before, contributing to greater awareness and understanding that they may suffer long term consequences from this type of crime.[18]

31.    MoneyGram failed to protect and safeguard Plaintiff's and Class Members' private information, in fact failing to adhere to even its most basic obligations. As a result, Plaintiff and Class Members have suffered or will suffer actual injury, including loss of privacy, costs, emotional distress, and loss of time.

## V.    CLASS ACTION ALLEGATIONS

32.    Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed nationwide class (the "Class"), defined as:

> All natural persons in the United States whose Personally Identifiable Information was compromised as a result of the Data Breach.

---

[16] Eugene Bekker, *What Are Your Odds of Getting Your Identity Stolen?*, IDENTITYFORCE (Apr. 15, 2021), https://www.identityforce.com/blog/identity-theft-odds-identity-theft-statistics (last visited Feb. 1, 2023).
[17] Christina Ianzito, *Identity Fraud Cost Americans $43 Billion in 2023*, AARP (Apr. 10, 2024), https://www.aarp.org/money/scams-fraud/info-2024/identity-fraud-report.html (last visited Oct. 11, 2024).
[18] Identity Theft: The Aftermath 2013, Identity Theft Resource Center, https://idtheftinfo.org/latest-news/72 (last visited Feb. 1, 2023).

33.    **Numerosity and Ascertainability:** Plaintiff does not know the exact size of the Class or the identity of the Class Members, since such information is in the exclusive control of the Defendants. However, it is likely that this class is comprised of millions of consumers throughout the United States. The number of Class Members is so numerous that joinder of all Class Members is impracticable. The names, addresses, and phone numbers of Class Members are identifiable through documents maintained by Defendant.

34.    **Commonality and Predominance:** This action involves common questions of law and fact which predominate over any question solely affecting individual Class Members. These common questions include:

  a.    whether Defendants engaged in the conduct alleged herein;

  b.    whether Defendants had a legal duty to use reasonable security measures to protect Plaintiffs' and Class Members' PII;

  c.    whether Defendants timely, accurately, and adequately informed Plaintiffs and Class Members that their PII had been compromised;

  d.    whether Defendants breached their legal duty by failing to protect the PII of Plaintiffs and Class Members;

  e.    whether Defendants acted reasonably in securing the PII of Plaintiffs and Class Members;

  f.    whether Plaintiffs and Class Members are entitled to injunctive relief;

  g.    and whether Plaintiffs and Class Members are entitled to damages and equitable relief.

35.    **Typicality:** Plaintiff's claims are typical of the other Class Members' claims because all Class Members were comparably injured through Defendants' substantially uniform misconduct, as described above. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other members of the Class that she represents, and there are no defenses that are

unique to Plaintiff. The claims of Plaintiff and Class Members arise from the same operative facts and are based on the same legal theories.

36.     **Adequacy:** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class's interest will be fairly and adequately protected by Plaintiff and her counsel.

37.     **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other detriment suffered by Plaintiff and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be virtually impossible for the Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not: individualized litigation creates a potential for inconsistent or contradictory judgments, increases the delay and expense to the parties, and increases the expense and burden to the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by this Court.

## VI.     CAUSES OF ACTION

### <u>COUNT ONE</u>
### NEGLIGENCE

38.     Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

39.     MoneyGram owed a duty to Plaintiff and Class Members to exercise reasonable care in safeguarding their sensitive personal information. This duty arose from the sensitivity of

the information collected, the expectation the information was going to be kept private, and the foreseeability of MoneyGram's data security shortcomings would result in an intrusion. This duty included, among other things, designing, implementing, maintaining, monitoring, and testing MoneyGram's networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff's and Class Members' information was adequately secured from unauthorized access.

40.    MoneyGram's Privacy Policy acknowledged MoneyGram's duty to adequately protect Plaintiff's and Class Members' PII.

41.    MoneyGram owed a duty to Plaintiff and Class Members to implement administrative, physical and technical safeguards, such as intrusion detection processes that detect data breaches in a timely manner, to protect and secure Plaintiff's and Class Members' PII.

42.    MoneyGram also had a duty to only maintain PII that was needed to serve customer needs.

43.    MoneyGram owed a duty to disclose the material fact that its data security practices were inadequate to safeguard Plaintiff's and Class Members' PII.

44.    MoneyGram also had independent duties under Plaintiff's and Class Members' state laws that required MoneyGram to reasonably safeguard Plaintiff's and Class Members' PII, and promptly notify them about the Data Breach.

45.    MoneyGram had a special relationship with Plaintiff and Class Members as a result of being entrusted with their PII, which provided an independent duty of care. Plaintiff's and Class Members' willingness to entrust MoneyGram with their PII was predicated on the understanding that MoneyGram would take adequate security precautions. Moreover, MoneyGram was capable of protecting its networks and systems, and the PII it stored on them, from unauthorized access.

46.     MoneyGram breached its duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Plaintiff's and Class Members' PII, including administrative, physical, and technical safeguards; (b) failing to detect the Data Breach in a timely manner; and (c) failing to disclose that its data security practices were inadequate to safeguard Plaintiff's and Class Members' PII.

47.     But for MoneyGram's breach of its duties, including its duty to use reasonable care to protect and secure Plaintiff's and Class Members' PII, Plaintiff's and Class Members' PII would not have been subject to unauthorized access.

48.     Plaintiff and Class Members were foreseeable victims of MoneyGram's inadequate data security practices. MoneyGram knew or should have known that a breach of its data security systems would cause damage to Plaintiff and Class Members.

49.     It was reasonably foreseeable that the failure to reasonably protect and secure Plaintiff's and Class Members' PII would result in unauthorized access to MoneyGram's networks, databases, and computers that stored or contained Plaintiff's and Class Members' PII.

50.     As a result of MoneyGram's negligent failure to prevent the Data Breach, Plaintiff and Class Members suffered injury, which includes, but is not limited to, exposure to a heightened and imminent risk of fraud, identity theft, and financial harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members have also incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitory services, and other protective measures to deter and detect identity theft. The unauthorized acquisition of Plaintiff's and Class Members' PII has also diminished the value of their PII.

51.    The harm of Plaintiff and Class Members was a proximate, reasonably foreseeable result of MoneyGram's breaches of its aforementioned duties.

52.    Therefore, Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

### COUNT TWO
### NEGLIGENCE PER SE

53.    Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

54.    Under Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, MoneyGram had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

55.    In addition, under state data security statutes, MoneyGram had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and Class Members' PII.

56.    MoneyGram breached its duties to Plaintiff and Class Members, under the Federal Trade Commission Act, 15 U.S.C. § 45, ("FTCA") and the state data security statutes, by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII.

57.    Plaintiff and Class Members were foreseeable victims of MoneyGram's violations of the FTCA and state data security statutes. MoneyGram knew or should have known that its failure to implement reasonable measures to protect and secure Plaintiff's and Class Members' PII would cause damage to Plaintiff and Class Members.

58.    MoneyGram's failure to comply with the applicable laws and regulations constitutes negligence *per se*.

59.     But for MoneyGram's violation of the applicable laws and regulations, Plaintiff's and Class Members' PII would not have been accessed by unauthorized parties.

60.     As a result of MoneyGram's failure to comply with applicable laws and regulations, Plaintiff and Class Members suffered injury, which includes but is not limited to the exposure to a heightened and imminent risk of fraud, identity theft, financial, and other harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff's and Class Members' PII has also diminished the value of the PII.

61.     The harm to Plaintiff and the Class Members was proximate, reasonably foreseeable result of MoneyGram's breaches of the applicable laws and regulations.

62.     Therefore, Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

## COUNT THREE
## GROSS NEGLIGENCE

63.     Plaintiff incorporates all foregoing factual allegations as if fully set for the herein.

64.     Plaintiff and Class Members entrusted MoneyGram with highly-sensitive and inherently personal private data subject to confidentiality laws.

65.     In requiring, obtaining and storing Plaintiff's and Class Members' PII, MoneyGram owed a duty of reasonable care in safeguarding the PII.

66.    MoneyGram's networks, systems, protocols, policies, procedures and practices, as described above, were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiff's and Class Members' PII were secured from unauthorized access.

67.    MoneyGram's networks, systems, protocols, policies, procedures and practices, as described above, were not reasonable given the sensitivity of the Plaintiff's and Class Members' private data and the known vulnerabilities of MoneyGram's systems.

68.    MoneyGram did not comply with state and federal laws and rules concerning the use of safekeeping of this private data.

69.    Upon learning of the Data Breach, MoneyGram should have immediately disclosed the Data Breach to Plaintiff and Class Members, credit reporting agencies, the Internal Revenue Service, financial institutions and all other third parties with a right to know and the ability to mitigate harm to Plaintiff and Class Members as a result of the Data Breach.

70.    Despite knowing its networks, systems, protocols, policies, procedures, and practices, as described above, were not adequately designed, implemented, maintained, monitored, and tested to ensure that Plaintiff's and Class Members' PII were secured from unauthorized access, MoneyGram ignored the inadequacies and was oblivious to the risk of unauthorized access it had created.

71.    MoneyGram's behavior establishes facts evidencing a reckless disregard for Plaintiff's and Class Members' rights.

72.    MoneyGram, therefore, was grossly negligent.

73.    MoneyGram's negligence also constitutes negligence per se.

74.    The negligence is directly linked to injuries.

75.     As a result of MoneyGram's reckless disregard for Plaintiff's and Class Members' rights by failing to secure their PII, despite knowing its networks, systems, protocols, policies, procedures, and practices were not adequately designed, implemented, maintained, monitored, and tested, Plaintiff and Class Members suffered injury, which includes but is not limited to the exposure to a heightened, imminent risk of fraud, identity theft, financial and other harm. Plaintiff and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiff and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring services, and other protective measures to deter or detect identity theft. The unauthorized acquisition of Plaintiff's and Class Members' PII has also diminished the value of their PII.

76.     The harm to Plaintiff and the Class Members was a proximate, reasonably foreseeable result of MoneyGram's breaches of the applicable laws and regulations.

77.     Therefore, Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

**COUNT FOUR**
**BREACH OF EXPRESS CONTRACTS**

78.     Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

79.     Plaintiff and members of the Class, additionally and alternatively, allege that they entered into valid and enforceable express contracts with MoneyGram.

80.     Under these express contracts, MoneyGram promised and was obligated to: (a) provide services to Plaintiff and Class Members; and (b) protect Plaintiff and the Class Members' PII. In exchange, Plaintiff and members of the Class agreed to pay money for these services.

81.     Both the provision of services, as well as the protection of Plaintiff's and Class Members' PII, were material aspects of these contracts.

82.     MoneyGram's express representations, including, but not limited to, express representations found in MoneyGram's Privacy Policy, formed an express contract requiring MoneyGram to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' PII.

83.     Alternatively, the express contracts included implied terms requiring MoneyGram to implement data security measures in accordance with federal, state and local laws, and industry standards sufficient to safeguard and protect the confidentiality of Plaintiff's and Class Members' PII.

84.     Consumers value their privacy, the privacy of their dependents, and the ability to keep their PII associated with obtaining services private. To customers such as Plaintiff and Class Members, services that do not adhere to industry-standard data security protocols to protect PII are fundamentally less useful and less valuable than services that adhere to industry-standard data security. Plaintiff and Class Members would not have entered into these contracts with MoneyGram without an understanding that their PII would be sufficiently safeguarded and protected.

85.     A meeting of the minds occurred, as Plaintiff and members of the Class provided their PII to MoneyGram and paid for the provided services in exchange for, amongst other things, protection of their PII.

86.     MoneyGram materially breached the terms of these express contracts, including, but not limited to, the terms stated in the relevant Privacy Policy. Specifically, MoneyGram did not comply with federal, state and local laws, or industry standards, or otherwise protect Plaintiff's

and the Class Members' PII, as set forth above. Further, on information and belief, MoneyGram has not yet provided Data Breach notifications to some affected Class Members who may already be victims of identity fraud or theft or are at imminent risk of becoming victims of identity theft or fraud associated with PII that they provided to MoneyGram. These Class Members are as yet unaware of the potential source for the compromise of their PII.

87.    The Data Breach was a reasonably foreseeable consequence of MoneyGram's actions in breach of these contracts.

88.    As a result of MoneyGram 's failure to fulfill the data security protections promised in these contracts, Plaintiff and members of the Class did not receive the full benefit of the bargain, and instead received services that were of a diminished value to that described in the contracts. Plaintiff and Class Members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the insecure services they received.

89.    Had MoneyGram disclosed that its security was inadequate or that it did not adhere to industry-standard security measures, neither Plaintiff, nor Class Members, nor any reasonable person would have purchased services from MoneyGram.

90.    As a result of MoneyGram's breach, Plaintiff and Class Members suffered actual damages resulting from the theft of their PII, as well as the loss of control of their PII, and remain in imminent risk of suffering additional damages in the future.

91.    As a result of MoneyGram's breach, Plaintiff and the Class Members have suffered actual damages resulting from their attempt to mitigate the effects of the breach of contract and subsequent Data Breach, including but not limited to, taking steps to protect themselves from the loss of their PII.

92. Accordingly, Plaintiff and the other members of the Class have been injured as a result of MoneyGram's breach of contracts and are entitled to damages and/or restitution in an amount to be determined at trial.

**COUNT FIVE**
**BREACH OF IMPLIED CONTRACTS**

93. Plaintiff incorporates all foregoing factual allegations as if fully set forth herein.

94. Plaintiff and Class Members were required to provide their PII to obtain services from MoneyGram. Plaintiff and Class Members entrusted their PII to MoneyGram in order to obtain services from them.

95. By providing their PII, and upon MoneyGram's acceptance of such information, Plaintiff and Class Members on one hand, and MoneyGram on the other hand, entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the services provided, whereby MoneyGram was obligated to take reasonable steps to secure and safeguard that information.

96. MoneyGram had an implied duty of good faith to ensure that the PII of Plaintiff and Class Members in its possession was only used in accordance with their contractual obligations.

97. MoneyGram was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiff's and Class Members' PII and to comply with industry standards and state laws and regulations for the security of this information, and MoneyGram expressly assented to these terms in its Privacy Policy as alleged above.

98. Under these implied contracts for data security, MoneyGram was further obligated to provide Plaintiff and all Class Members, with prompt and sufficient notice of any and all

unauthorized access and/or theft of their PII.

99.    Plaintiff and Class Members performed all conditions, covenants, obligations, and promises owed to MoneyGram, including paying for the services provided by MoneyGram and/or providing the PII required by MoneyGram.

100.    MoneyGram breached the implied contracts by failing to take adequate measures to protect the confidentiality of Plaintiff's and Class Members' PII, resulting in the Data Breach. MoneyGram unreasonably interfered with the contract benefits owed to Plaintiff and Class Members.

101.    Further, on information and belief, MoneyGram has not yet provided Data Breach notifications to some affected Class Members who may already be victims of identity fraud or theft, or are at imminent risk of becoming victims of identity theft or fraud, associated with the PII that they provided to MoneyGram. These Class Members are unaware of the potential source for the compromise of their PII.

102.    The Data Breach was a reasonably foreseeable consequence of MoneyGram's actions in breach of these contracts.

103.    As a result of MoneyGram's conduct, Plaintiff and Class Members did not receive the full benefit of the bargain, and instead received services that were of a diminished value as compared to the secure services they paid for. Plaintiff and Class Members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

104.    Neither Plaintiff, nor Class Members, nor any reasonable person would have provided their PII to MoneyGram had MoneyGram disclosed that its security was inadequate or that it did not adhere to industry-standard security measures.

105.    As a result of MoneyGram's breach, Plaintiff and the Class Members have suffered actual damages resulting from theft of their PII, as well as the loss of control of their PII, and remain in imminent risk of suffering additional damages in the future.

106.    As a result of MoneyGram's breach, Plaintiff and the Class Members have suffered actual damages resulting from their attempt to mitigate the effect of the breach of implied contract and subsequent Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII. As a result, Plaintiff and the Class Members have suffered actual identity theft and the inability to control their PII.

107.    Accordingly, Plaintiff and Class Members have been injured as a result of MoneyGram's breach of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT SIX
## BREACH OF IMPLIED DUTY OF
## GOOD FAITH AND FAIR DEALING

108.    Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

109.    Plaintiff and Class Members entered into and/or were the beneficiaries of contracts with Defendant, as alleged above.

110.    These contracts were subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual obligations—both explicit and fairly implied—and would not impair the rights of the other parties to receive their rights, benefits, and reasonable expectations under the contracts. These included the covenants that Defendant would act fairly, reasonably, and in good faith in carrying out their contractual obligations to protect the confidentiality of Plaintiff's and Class Members' PII and to

comply with industry standards and federal and state laws and regulations for the security of this information.

111.    Defendant entered into special relationships with Plaintiff and Class Members, who entrusted their confidential PII to Defendant and paid for services with Defendant.

112.    Defendant promised and was obligated to protect the confidentiality of Plaintiff's and Class Members' PII from disclosure to unauthorized third parties. Defendant breached the covenant of good faith and fair dealing by failing to take adequate measures to protect the confidentiality of Plaintiff's and Class Members' PII, which resulted in the Data Breach. Defendant unreasonably interfered with the contract benefits owed to Plaintiff and Class Members by failing to implement reasonable and adequate security measures consistent with industry standards to protect and limit access to the PII of Plaintiff and the Class in Defendants' possession.

113.    Plaintiff and Class Members performed all conditions, covenants, obligations, and promises owed to Defendant, including paying Defendant for services and providing it the confidential PII required by the contracts.

114.    As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members did not receive the full benefit of their bargain—services with reasonable data privacy—and instead received services that were less valuable than what they paid for and less valuable than their reasonable expectations under the contracts. Plaintiff and Class Members have suffered actual damages in an amount equal to the difference in the value between services with reasonable data privacy that Plaintiff and Class Members paid for, and the services they received without reasonable data privacy.

115.    As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members have suffered actual damages resulting from the theft of their

PII and remain at imminent risk of suffering additional damages in the future.

116.    As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members have suffered actual damages resulting from their attempt to ameliorate the effect of the Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII.

117.    As a direct and proximate cause of Defendants' conduct, Plaintiff and Class Members suffered injury in fact and are therefore entitled to relief, including restitution, declaratory relief, and a permanent injunction enjoining Defendant from its conduct. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law.

## COUNT SEVEN
## UNJUST ENRICHMENT
## (ALTERNATIVE TO BREACH OF CONTRACT CLAIM)

118.    Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

119.    Plaintiff and Class Members conferred a monetary benefit on Defendant in the form of monetary payments—directly or indirectly—for services.

120.    Defendant collected, maintained, and stored the PII of Plaintiff and Class Members and, as such, Defendant had knowledge of the monetary benefits conferred by Plaintiff and Class Members.

121.    The money that Plaintiff and Class Members paid to Defendant should have been used to pay, at least in part, for the administrative costs and implementation of data management and security. Defendant failed to implement—or adequately implement—practices, procedures, and programs to secure sensitive PII, as evidenced by the Data Breach.

122.    As a result of Defendants' failure to implement security practices, procedures, and programs to secure sensitive PII, Plaintiff and Class Members suffered actual damages in an

amount equal to the difference in the value between services with reasonable data privacy that Plaintiff and Class Members paid for, and the services they received without reasonable data privacy.

123.    Under principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiff and Class Members because Defendant failed to implement the data management and security measures that are mandated by industry standards and that Plaintiff and Class Members paid for.

124.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Class all unlawful or inequitable proceeds received by Defendant. A constructive trust should be imposed upon all unlawful and inequitable sums received by Defendant traceable to Plaintiff and the Class.

## COUNT EIGHT
## DECLARATORY JUDGMENT

125.    Plaintiff realleges and incorporates by reference the allegations contained in each of the preceding paragraphs as if fully set forth herein.

126.    Plaintiff and the Class have stated claims against Defendant based on negligence, negligence per se, gross negligence and negligent misrepresentation, and violations of various state and federal statutes.

127.    Defendant failed to fulfill its obligations to provide adequate and reasonable security measures for the PII of Plaintiff and the Class, as evidenced by the Data Breach.

128.    As a result of the Data Breach, Defendants' system is more vulnerable to unauthorized access and requires more stringent measures to be taken to safeguard the PII of Plaintiff and the Class going forward.

129.    Plaintiff seeks a declaration that Defendant must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII of Plaintiff and the Class. Specifically, Plaintiff and the Class seek a declaration that Defendants' existing security measures do not comply with their obligations, and that Defendant must implement and maintain reasonable security measures on behalf of Plaintiff and the Class to comply with their data security obligations.

## VII.    PRAYER FOR RELIEF

Plaintiff, on behalf of herself and on behalf of the proposed Class and Subclasses, request that the Court:

a.  Certify this case as a class action, appoint Plaintiff as class representative, and appoint Plaintiff's Counsel as Class Counsel for Plaintiff to represent the Class;

b.  Find that MoneyGram breached its duty to safeguard and protect that PII of Plaintiff and Class Members that was compromised in the Data Breach;

c.  Award Plaintiff and Class Members appropriate relief, including actual, and statutory damages, restitution, and disgorgement;

d.  Award equitable, injunctive and declaratory relief as may be appropriate;

e.  Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

f.  Award pre-judgment and post-judgment interest as prescribed by law; and

g.  Grant additional legal or equitable relief as this Court may find just and proper.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: October 16, 2024                    Respectfully submitted,

                                       By:    */s/ W. Mark Lanier*
                                               W. Mark Lanier
                                             TX Bar No. 11934600
                                             **THE LANIER LAW FIRM, P.C.**
                                             10940 W. Sam Houston Pkwy N.
                                             Suite 100
                                             Houston, Texas 77064
                                             T: (713) 659-5200
                                             F: (713) 659-2204
                                             mark.lanier@lanierlawfirm.com

                                             Thomas E. Loeser*
                                             Karin B. Swope*
                                             Jacob Alhadeff*
                                             **COTCHETT PITRE & MCCARTHY LLP**
                                             999 N. Northlake Way, Suite 215
                                           Seattle, WA 98103
                                           Tel: (206) 802-1272
                                           Fax: (650) 697-0577
                                           tloeser@cpmlegal.com
                                           kswope@cpmlegal.com
                                           jalhadeff@cpmlegal.com

                                           *Pro Hac Vice admission forthcoming*

                                           *Attorneys for Plaintiff and the proposed Class*